### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### LITTLE ROCK DIVISION

**JOSE TURCIOS, D.D.S.**                                             **PLAINTIFF**

**v.**                    **CASE NO. 4:17-CV-773-JLH**

**TABITHA CARTER, INDIVIDUALLY;**
**BRANDON EGGERTH, INDIVIDUALLY;**
**JARED MCCAULEY, INDIVIDUALLY;**
**BRIAN DUNGER, INDIVIDUALLY;**
**MICHAEL LUNDY, INDIVIDUALLY;**
**ANDREA M. CARTER, INDIVIDUALLY;**
**DECEMBER SMITH AND SARA**
**MELTON**                                                          **DEFENDANTS**

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF SEPARATE DEFENDANT ANDREA CARTER

## I.    INTRODUCTION

In a video dated March 11 , 2015, 15-year-old December Smith can

be seen relating how her dentist, Dr. Jose Turcios, touched her breast,

kissed her, caused her to put her hand on his penis, and put his fingers

in and out of her throat in a sexually indecent manner.[1] After being

acquitted on criminal charges, Turcios filed this § 1983 action against

Andrea Carter, an investigator with the Arkansas State Police Crimes

Against Children Division as well as five Little Rock Police Department

---

[1] Exhibit 2- DVD of December Smith Interview.

officers, the victim of the sexual assault, and the victim's mother.[2]

Turcios asserts claims of malicious prosecution, civil conspiracy, and

substantive due process under the Fourth and Fourteenth

Amendments, as well as the Civil Rights Act of 1871 and 42 U. S. C. §

1983.

Facts established beyond genuine dispute show that the acts of

Andrea Carter were founded upon a reasonable suspicion that Turcios

violated the Arkansas Child Maltreatment Act.[3] Turcios can come

nowhere close to establishing a claim against Andrea Carter. On these

facts, Andrea Carter is entitled to judgment as a matter of law on

Turcios' claims.

Because Turcios' federal claims against Andrea Carter should be

dismissed, his supplemental state law claims, if any[4], should also be

dismissed.[5] For these reasons and others, set forth more fully below,

Andrea Carter is entitled to summary judgment.

---

[2] Doc. No. 3.

[3] Ark. Code Ann. § 12-18-101.

[4] Turcios' Amended Complaint does not reference any state law claims in any of his
three counts, however, in paragraph 1, he states that 28 U. S. C. § 1367 as a basis
for jurisdiction of his action.

[5] *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130 (1966).

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is to be "rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[6] The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact requiring the trier of fact to resolve the dispute in favor of one party or the other.[7] An issue of fact is material only if the fact could affect the outcome of the case under governing law.[8]  The non-moving party must establish that there is a genuine issue of material fact in order to survive a motion for summary judgment.[9] To establish the existence of a genuine issue, the non-moving party must produce "specific facts showing that there is a genuine issue for trial."[10] The mere existence of some disputed factual issues will not defeat a summary judgment motion where the

---

[6] Fed. R. Civ. P. 56(c).

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[8] *Anderson*, 477 U.S. at 248.

[9] *Celotex*, 477 U.S. at 322; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[10] Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 587.

disputed issues are not genuine issues of material fact.[11] A disputed issue is genuine if the evidence could lead a reasonable jury to return a verdict for the non-moving party.[12]

## III. STATEMENT OF FACTS

On March 9, 2015, the Child Abuse Hotline received an allegation of sexual abuse naming then 15-year-old December Smith as the alleged victim and Dr. Jose Turcios as the alleged offender.[13] The reporter stated that Turcios performed dental work on Smith on March 4, 2015, and that Turcios sexually abused Smith during that time.[14] Smith's grandmother, Myrtle Clifton, corroborated Smith's account of telling Clifton what occurred.[15] Clifton and Smith reported the information to Smith's mother, Sarah Melton, who contacted LRPD the same day.[16]

On March 11, 2015, Little Rock Police Department Detective Tabitha McCrillis (now known as LRPD Sergeant Tabitha Carter)

---

[11] *Anderson*, 477 U.S. at 247-48.

[12] *Anderson*, 477 U.S. at 248.

[13] Exhibit 1: Crimes Against Children Division- Arkansas State Police Report to Prosecuting Attorney at A. Carter 75.

[14] *Id*.

[15] Exhibit 1 at A. Carter 75, 85.

[16] *Id*. at A. Carter 75, 82.

interviewed December Smith at the Pulaski County Children's Protection Center.[17] Arkansas State Police Crimes Against Children Division Investigator Andrea Carter observed the interview through a two-way mirror.[18] December Smith provided a credible disclosure of sexual abuse (sexual contact), advising that on March 4, 2015, she was getting a crown on her tooth and was under the influence of nitrous gas.[19] Smith advised that she was left alone with Turcios on 3 occasions, during which time Turcios told her, "I want you so bad," and then kissed her on the mouth.[20] Smith stated Turcios stuck his finger down her throat, repeatedly describing the dentist moving his finger in and out of her mouth in a sexual way.[21] Smith advised the 2nd time she was along with Turcios, he placed her hand on his knee before he stood up, placed her hand on his penis, and grabbed her breast.[22] Smith stated Turcios kissed her again and put his tongue in her mouth.[23] Smith

---

[17] *Id.*; Exhibit 2: Video recording of interview.

[18] Exhibit 3: Transcript of Andrea Carter's Deposition, 101:22-25.

[19] Exhibit 1 at A. Carter 75, 79; Exhibit 2.

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

advised that on the third occasion, Turcios stuck his fingers down her throat with his gloves off, in a "back and forth" motion.[24] Smith stated that even on nitrous gas, she was fully aware of what was happening.[25]

Smith stated that when she left Turcios' office, she told her grandmother, Myrtle Clifton, about what happened.[26] Smith also reported Turcios made her uncomfortable in the past by telling her that she was his prettiest patient and patting her butt.[27]

On March 12, 2015, LRPD Det. McCrillis – not Andrea Carter – obtained a warrant for the arrest of Turcios, which  was issued by the Little Rock District Court.[28] On March 12, 2015, Turcios was arrested – not by Andrea Carter – at the Little Rock Athletic Club.[29] Andrea Carter does not make recommendations for the arrest of individuals accused of sexual abuse of minors.[30]

---

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] Exhibit 5- Warrant for Arrest.

[29] Exhibit 1 at A. Carter 83.

[30] Exhibit 3 at 213:17-19, 214:9-12.

After his arrest, Turcios was taken to the LRPD where he was interviewed by Detectives Tabitha McCrillis and Jarred McCauley.[31] Andrea Carter was not present when Turcios was interviewed.[32] Andrea Carter listened to an audio recording of Turcios' interview.[33] When Turcios was confronted with Smith's allegations, he responded, "How can that happen when my assistant is right there?"[34] Turcios stated that is assistants would say that he was never alone with Smith.[35]

On March 11, 2015, LRPD Detective McCrillis and ASP-CACD Investigator Andrea Carter interviewed Valerie Robertson, a former employee of Turcios.[36] Robertson stated that Turcios would rub her neck, that other employees told her Turcios was a pervert, would randomly touch her on her neck, and that once when apologizing for yelling at her, he put "his boner on her ass" and patted her on her butt.[37] Robertson told Andrea Carter that she heard that Turcios had

---

[31] Exhibit 1 at A. Carter 83.

[32] *Id*.

[33] *Id*.

[34] *Id*. (¶1); Exhibit 6- excerpt from transcript of Turcio's interview.

[35] *Id*.

[36] *Id*. at A. Carter 88; Exhibit 3 at 178:5-7.

[37] Exhibit 1 at A. Carter 88.

touched another woman inappropriately and that there was an out-of-court settlement.[38] In his deposition, Turcios admitted that he paid a woman, a dental assistant who accused Turcios of touching her inappropriately when he performed dental work on her, as part of an out-of-court settlement.[39]

On March 19, LRPD Detective Tabitha McCrillis – not Andrea Carter – obtained a search and seizure warrant, which was executed at Turcios' office and video surveillance recordings were retrieved.[40] ASP-CACD Investigator Andrea Carter reviewed the surveillance recordings and determined that Turcios was alone with Smith on March 4, 2015, on several occasions throughout her two hour treatment.[41] The video surveillance did not depict inside of the exam room where Smith was being treated; however, the doorways to the exam room were depicted.[42] When exiting the exam room, Andrea Carter observed Turcios striking

---

[38] *Id.*

[39] Exhibit 4- Transcript of Jose Turcios' Deposition at 27:24 – 30:11.

[40] Exhibit 1 at A. Carter 94; Exhibit 7- Search Warrant.

[41] Exhibit 1 at 75, 83 (¶¶ 2, 3), 84, 93.

[42] *Id.*

the buttocks of Smith two times while she was walking down the hallway of the clinic.[43]

Andrea Carter concluded that there was a preponderance of evidence to support the allegation of sexual abuse and closed her investigation with a true finding on April 5, 2015.[44] A Child Maltreatment True Investigative Determination Notice to Alleged Adult Offender was sent to Turcios on April 7, 2015.[45]

On April 14, 2015, Turcios appealed the child maltreatment finding to the Appeal and Hearings Office of the Arkansas Department of Human Services.[46] On December 1, 2016, and Administrative Law Judge heard Turcios' appeal.[47] On December 19, 2016, the ALJ issued his Final Order, finding that Turcios engaged in sexual contact with Smith based on her credible statements.[48]

The ALJ noted that Turcios had stated in his interview at the LRPD that he had not been alone with Smith, but that the review of his

---

[43] *Id*.; Exhibit 3 at 109:17-24, 117:5-6, 157:21 – 158:3

[44] Exhibit 1 at A. Carter 75-76.

[45] Exhibit 8- Notice to Turcios.

[46] Exhibit 9- Turcios' Notice of Appeal.

[47] Exhibit 10- Notice of Administrative Hearing.

[48] Exhibit 11- ALJ's Final Order.

office video recordings show that Turcios was left alone with Smith five times.[49] The ALJ found Turcios was not credible and that Smith was more credible.[50] The ALJ found that Turcios' expert witness' testimony was invalid and that gas did not negate Smith's clear and detailed recollections of the touching incidents. "It is unclear when [Smith] was actually on the gas or oxygen. She was on the nitrous oxide briefly, and the effects disappear quickly. [Smith] stated that she was fully aware of what was happening while on the gas."[51] The ALJ found that Turcios did touch Smith on her breast and put her hand on his penis.  Turcios told Smith, "I want you so bad" and kissed her. "He did those actions when there was no one else present." The ALJ found Turcios' actions were for sexual gratification.[52]

The ALJ concluded that Turcios' actions met the definition of sexual abuse as defined by the Arkansas Child Maltreatment Act.[53] The ALJ decided that the ASP-CACD met its burden of presenting by a preponderance of the evidence that Turcios abused Smith and that the

---

[49] *Id.*, ¶¶6, 7,11.

[50] *Id.*, ¶¶ 11, 12.

[51] *Id.*, ¶13.

[52] *Id.*, ¶14.

[53] Exhibit 11 at A. Carter 5.

allegations were true.[54] The ALJ ordered that Turcios' name be placed on the Arkansas Child Maltreatment Central Registry.[55]

On December 22, 2016, Turcios was notified through his counsel of the ALJ's findings and order and was informed that if he wished to appeal the decision through the Administrative Procedure Act, he must file a petition in the circuit court within 30 days.[56] Turcios did not appeal the administrative order.[57]

Although a criminal proceeding was commenced against Turcios, Andrea Carter was not a part of it. She did not testify at his criminal trial.[58]

## IV.   ARGUMENT

A.   A malicious prosecution claim is not cognizable under §
    1983. In Count I, Turcios asserts a malicious prosecution
    claim under § 1983. Because there is no clearly
    established right to be free from malicious prosecution,
    Andrea Carter is entitled to qualified immunity and thus
    a judgment in her favor on Turcios' § 1983 claim for
    malicious prosecution. Even if such a claim were viable,
    Andrea Carter would be entitled to judgment as a matter
    of law.

---

[54] *Id.*

[55] *Id.*

[56] Exhibit 12- Notice of right to appeal.

[57] Exhibit 4 at 52:18-20.

[58] Exhibit 3 at 191:1-25.

1.  No Constitutional Violation.

Turcios alleges that Andrea Carter – although she did not prosecute him – is liable for malicious prosecution because he was acquitted of criminal charges brought against him arising out of the same facts that Andrea Carter used to substantiate her finding of child maltreatment. However, as a matter of clearly established law, "It is well established in [the Eighth Circuit] that an action for malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury."[59] As no constitutional injury occurred, Andrea Carter is entitled to qualified immunity.

"Qualified immunity shields government officials from liability in their individual capacity so long as the official has not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' "[60] "To determine whether a public official is entitled to immunity, courts conduct a two-pronged analysis: 'whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right and whether the right was clearly established at the

---

[59] *Pace v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir. 2000) (internal quotation marks and citation omitted).

[60] *Harlow v. Fitzgerald*, 457 U. S. 800, 818 (1982).

time of the alleged infraction.' "[61] An official is entitled to qualified

immunity only if both prongs are satisfied.[62]

"To be clearly established, preexisting law must make the

unlawfulness of the officials' conduct apparent so that they have 'fair

and clear warning' they are violating the constitution; qualified

immunity therefore protects 'all but the plainly incompetent or those

who knowingly violate the law.' "[63] '[C]learly established law' should not

be defined 'at a high level of generality.' "[64] It "must be 'particularized'

to the facts of the case."[65]

Section 1983 only provides a remedy for violations of rights

expressly secured by federal statutes or the Constitution.[66] "[T]he Court

does not suggest that § 1983 is simply a federalized amalgamation of

pre-existing common-law claims, an all-in-one federal claim

---

[61] *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017) (quoting *Carter v. Huterson*, 831 F.3d 1104, 1107).

[62] *Id*. at 642.

[63] *Estate of Walker v. Wallace*, 881 F.3d 1056, 1060 (8th Cir. 2018) (quoting *White v. Pauly*, —— U.S. ——, 137 S.Ct. 548, 551, 196 L.Ed.2d 463 (2017) ) (per curiam).

[64] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

[65] *Id*.

[66] *Maine v. Thiboutot,* 448 U.S. 1, 4, (1980)*; McNees v. City of Mountain Home,* 993 F.2d 1359, 1361 (8th Cir.1993) (claim for malicious prosecution is not cognizable under § 1983 if it does not allege a constitutional or federal statutory injury).

encompassing the torts of assault, trespass, false arrest, defamation,

malicious prosecution, and more."[67] Because the Constitution does not

mention malicious prosecution and Turcios has not stated any basis for

a federal action for malicious prosecution, Count I of the Amended

Complaint fails as a matter of law.[68]

As recently at 2014, the Eighth Circuit has held that officials are

entitled to qualified immunity from malicious prosecution claims

"because no such constitutional right had been clearly established."[69]

Turcios cannot provide any case law from the Eighth Circuit or the

Supreme Court that suggests a clearly established right to be free from

malicious prosecution existed at the time he alleges Andrea Carter

violated his rights. Accordingly, Andrea Carter is entitled to qualified

immunity because she acted based on a reasonable suspicion of child

---

[67] *Rehberg v. Paulk*, 566 U.S. 356, 366 (2012).

[68] *See*, *Kohl v. Casson,* 5 F.3d 1141, 1145 (8th Cir.1993) (allegations of malicious prosecution without more do not state civil rights claim); *Kurtz v. City of Shrewsbury*, 245 F.3d 753 (8th Cir. 2001)(malicious prosecution not a constitutional injury); *Technical Ordnance, Inc. v. United States*, 244 F.3d 641, 650 (8th Cir. 2001) ("The general rule is that an action for malicious prosecution does not state a claim of constitutional injury.").

[69] *Bates v. Hadden*, 576 Fed.Appx. 636, 639 (8th Cir. 2014) (per curiam).

abuse and did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."[70]

Turcios attempts to sustain his claim with his assertion that Andrea Carter and LRPD Detective Tabitha McCrillis had a personal relationship during the investigation of the case. Although Andrea Carter and Detective McCrillis did indeed get married after Andrea Carter had completed her report, the record reflects that they were not dating during Andrea Carter's investigation.[71] Turcios cannot establish his assertion. His allegations are mere speculation. "[M]ore than the mere recitation of an improper state of mind such as malice, bad faith, retaliatory motive or conspiracy is required to defeat qualified immunity for conduct which, absent that state of mind, would be constitutionally acceptable or protected by immunity."[72]

In sum, because the actions of Andrea Carter  were supported by facts supporting a reasonable suspicion of child abuse, Andrea Carter is entitled to qualified immunity for her actions pertaining to the

---

[70] *See Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).

[71] Exhibit 3 at 34:23-24, 35:5-21, 36:9-15, 37:20-25, 38:1-13.

[72] *Myers v. Morris*, 801 F.2d 1437, 1453 (8th Cir. 1987).

investigation of the report of child abuse and Turcios' § 1983 claims against her should be dismissed.

2. Reasonable suspicion.

Even if a malicious prosecution claim was a recognized constitutional injury, Turcios' claim would fail. Andrea Carter had reasonable suspicion that Turcios sexually abused December Smith.

"[T]he Constitution does not guarantee that criminal charges will be filed only against the guilty."[73] Moreover, every defendant ultimately acquitted of criminal charges does not have a § 1983 cause of action against the State.[74]

The legal test for determining whether an official had a "reasonable suspicion" is less rigorous than the standard for determining whether he or she had probable cause.[75] This stands to reason since, by definition, a suspicion is never a certainty but is instead the incipient apprehension of a possibility that has not yet been

---

[73] *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 977 n.6 (8th Cir. 1993).

[74] *Baker v. McCollan*, 443 U.S. 137, 145 (1979).

[75] *See U.S. v. Arvizu,* 534 U.S. 266, 274 (2002) (holding reasonable suspicion of possible criminal activity "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.") (internal quotations and citations omitted); *Manzano v. South Dakota Dept. of Social Services*, 60 F.3d 505, 512 (1995) (describing reasonable suspicion test as "less rigorous" than probable cause standard).

determined to be—or not to be—the case, and which, therefore, invites further investigation. Suspicion is generally understood to mean "[t]he imagination or apprehension of the existence of something wrong based on slight or no evidence, without definitive proof."[76] However, in order to be a "reasonable" suspicion sufficient to warrant a government intrusion upon the constitutionally protected interests of an individual, it must be a suspicion based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."[77] Given that a "suspicion" is not a definitive conclusion, an official "need not rule out the possibility of innocent conduct" in order to have a reasonable suspicion that someone had engaged in unlawful activity.[78] Furthermore, the determination of whether reasonable suspicion existed "is not to be made with the vision

---

[76] Black's Law Dictionary 1460 (Bryan A. Garner ed., 7th ed. West 1990).

[77] *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968); *See also United States v. Houston,* 548 F.3d 1151, 1153 (8th Cir. 2008) ("A law enforcement officer has reasonable suspicion when the officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.") (internal quotations and citations omitted).

[78] *See United States v. Arvizu,* 534 U.S. 266, 277 (2002); *accord United States v. Stewart,* 631 F.3d 453, 457 (8th Cir. 2011).

of hindsight, but instead by looking to what the officer reasonably knew at the time."[79]

In the present case, Smith's statements regarding Turcios' conduct were sufficient to raise a reasonable suspicion that Turcios had touched Smith's breast, placed her hand on his penis, and kissed her while performing dental treatment. The video of the forensic interview shows Smith making statements from which one may rationally infer that Turcios sexually abused her.

In the present case it is undisputed that Andrea Carter viewed the forensic interview of December Smith through a two-way mirror before preparing her final report. Smith's account of events, as captured in the video of her interview plus the video surveillance recordings from Turcios' office which depicted Turcios patting Smith on the buttocks as she was leaving the treatment room, presented Andrea Carter with facts sufficient to raise a reasonable suspicion that Smith had been sexually abused, which reasonable suspicion clearly warranted the conclusion in Andrea Carter's report that Turcios' name should be placed on the Arkansas Child Maltreatment Registry. The Eighth

---

[79] *United States v. Hollins,* 685 F.3d 703, 705–706 (8th Cir. 2012) (internal quotations and citations omitted).

Circuit Court of Appeals has previously found government officials are entitled to rely on allegations of sexual abuse even when made by young children.[80]

Because Smith's statements regarding Turcios' actions, coupled with the statement of one of Turcios' former employees that he had touched her inappropriately plus Turcios' admission that he paid money to another former employee who accused him of touching her inappropriately, gave Andrea Carter a rational basis for suspecting that Turcios had sexually abused Smith, her suspicion was reasonable, thus Turcios' Fourth Amendment rights were not violated. Andrea Carter did not conduct the criminal investigation.  She did not participate in drafting the affidavit in support of the arrest warrant or the search warrant. Andrea Carter did not arrest – indeed she was not even present. Turcios can produce no evidence that Andrea Carter acted with malice, a reckless disregard for the truth, or actual knowledge that the statements in her written report were false. In light of the state's interest in protecting children from sexual abuse, Andrea Carter's reasonable suspicion of child abuse warranted the preparation of a

---

[80] *See Myers*, 810 F.2d 1437, 1456-1457 (8th Cir. 1987).

report as a reasonably proportionate response to the serious nature of the harm that the state was attempting to protect Smith from.

Andrea Carter's suspicion of child abuse was bolstered by the Administrative Law Judge's findings and conclusion that Turcios was less credible than Smith and that Turcios had abused Smith by a preponderance of the evidence.

Turcios simply cannot establish that Andrea Carter violated his constitutional rights and his malicious prosecution claim should be dismissed.

3. *Heck* bar.

Even if Turcios established a cognizable constitutional violation for malicious prosecution, it should be dismissed because Turcios did not appeal the Administrative Law Judge's order that Turcios had sexually abused Smith. The claim should not proceed comparable to the bar embodied in the *Heck* doctrine.[81]

---

[81] In *Heck v. Humphrey*, the Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. 477, 487 (1994).

It is undisputed that the Administrative Law Judge found that Turcios sexually abused Smith.  It is also undisputed that Turcios did not appeal that decision to a circuit court as provided for in the Administrative Procedures Act. If Turcios were successful in his claim against Andrea Carter, it would effectively invalidate the Administrative Law Judge's order. Because Turcios did not appeal the ALJ's order, his claim against Andrea Carter should be barred.

B.    There must be a deprivation of a constitutional right in order to sustain a civil conspiracy claim. Turcios cannot establish a deprivation of a constitutional right. Andrea Carter is entitled to judgment as a matter of law on the civil conspiracy claim.

Turcios alleges that the defendants acted in concert to deprive him of his constitutional rights, including discrimination based on his race.[82] To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that

---

[82] Doc. No. 3 at ¶¶ 95-104.

the overt act injured the plaintiff.[83] The plaintiff is also required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim.[84]

A plaintiff's speculative allegations are insufficient to prove a conspiracy. "Speculation and conjecture are not enough to prove that a conspiracy exist[ed]."[85] A conspiracy claim requires allegations of specific facts showing "meeting of minds" among alleged conspirators.[86]

To state such an equal protection claim, a complaint must allege the existence of a similarly situated individual or group that was treated differently than the plaintiff.[87]

Because, as demonstrated in the previous section, Turcios cannot establish a constitutional violation, his conspiracy claim fails. Andrea Carter did not participate in obtaining a warrant for Turcios' arrest.

---

[83] *Helmig v. Fowler*, 828 F.3d 755, 763 (8th Cir. 2016) (citing *Askew v. Millerd,* 191 F.3d 953, 957 (8th Cir.1999)).

[84] *Askew,* 191 F.3d at 957. *See also, Villanueva v. McInnis,* 723 F.2d 414, 416 (5th Cir.1984) ("it remains necessary to prove an actual deprivation of a constitutional right; a conspiracy to deprive is insufficient ... [w]ithout a deprivation of a constitutional right or privilege, [the defendant] has no liability under § 1983.").

[85] *Mettler v. Whitledge,* 165 F.3d 1197, 1206 (8th Cir.1999).

[86] *Rogers v. Bruntrager,* 841 F.2d 853, 856 (8th Cir.1988)

[87] *E.g.*, *Klinger v. Department of Correction*, 31 F.3d 727, 731 (8th Cir. 1994).

She did not participate in obtaining the search and seizure warrant that was executed at Turcios' office. She did not file criminal charges against Turcios and did not testify at the criminal trial. Turcios cannot establish any meeting of the minds between Andrea Carter and any other defendant that would establish a conspiracy.

The only allegation appearing in the Amended Complaint asserting an equal protection claim states, "In December 2015, Rev. Tim Reed of the Covenant Presbyterian Church called the CACD Child Abuse Hotline and reported allegations of sexual abuse committed by a physician named Dr. James Nesmith ("Dr. Nesmith"), who is a white male."[88] Andrea Carter testified that she had no involvement in the Nesmith case.[89] Turcios cannot establish that Andrea Carter treated Turcios differently than anyone else.

As set out previously herein, Turcios seeks to bolster his conspiracy claim with his assertion that Andrea Carter and LRPD Detective Tabitha McCrillis had a personal relationship during the investigation of the case. Although Andrea Carter and Detective McCrillis did indeed get married after Andrea Carter had completed her

---

[88] Doc. 3 at ¶ 64.

[89] Exhibit 3 at 60:20 – 62:13.

report, the record reflects that they were not dating during Andrea

Carter's investigation.[90] But even if Andrea Carter and the detective

had a personal relationship, Turcios can present no evidence to support

any "meeting of the minds" requisite to support a conspiracy claim.

Turcios' speculation and conjecture are simply not enough.

For these reasons, Andrea Carter is entitled to judgment as a

matter of law on the conspiracy claim.

C.   A substantive due process claim must be based on
     conscience shocking action. Andrea Carter acted
     reasonably when investigating the sexual abuse claims
     against Turcios. Andrea Carter is entitled to judgment as
     a matter of law on the substantive due process claim.

Turcios fails to state a substantive due process claim because his

malicious prosecution and conspiracy allegations are governed by the

Fourth Amendment and also because he cannot demonstrate any

conscience-shocking conduct by Andrea Carter.[91]  The Eighth Circuit

has held that malicious prosecution is not a violation of substantive due

process.[92]

---

[90] Exhibit 3 at 34:23-24, 35:5-21, 36:9-15, 37:20-25, 38:1-13.

[91] *Johnson v. Crooks*, 326 F.3d 995, 1000 (8th Cir. 2003).

[92] *Harrington v. City of Council Bluffs*, 678 F.3d 676, 680-81 (8th Cir. 2012).

To state a substantive due process claim, a plaintiff must allege government actions that were "shocking to the contemporary conscience."[93] As detailed previously herein, Andrea Carter acted reasonably in considering the evidence regarding Turcios' sexual abuse of Smith. Her conclusion, which was affirmed by the Administrative Law Judge, does not shock the conscience.

Andrea Carter reasonably performed her duties as a Crimes Against Children Division Investigator. She played no part in the temporary suspension of Turcios' dental license. Andrea Carter is entitled to judgement as a matter of law on the substantive due process claim.

D.  Because all federal claims against Andrea Carter should be dismissed, Turcios' state claims, if any, should be dismissed.

Upon dismissal of the federal claims against Andrea Carter, any state-based claims that may be lurking in the Amended Complaint should be dismissed. Turcios' Amended Complaint does not purport to state any state law claims, but his jurisdictional statement does reference the Court's supplemental jurisdiction statute. As to any

---

[93] _Flowers v. City of Minneapolis,_ 478 F.3d 869, 873 (8th Cir.2007) (internal quotation marks omitted).

lurking state claims, no independent basis for federal jurisdiction appears from the pleadings and Turcios presents them to this Court solely upon the court's supplemental jurisdiction.

The nature of the doctrine of supplemental jurisdiction has been explained by the United States Supreme Court in *United Mine Workers v. Gibbs* as follows:

> That power [to entertain claims under supplemental jurisdiction] need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. *Certainly, if the federal claims are dismissed before trial,* even though not insubstantial in a jurisdictional sense, *the state claims should be dismissed as well.*"[94]

Although the doctrine of supplemental jurisdiction permits the joinder of federal and non-federal claims which arise out of a common nucleus of operative fact, "[i]n most cases, when federal and state claims are joined and the federal claims are dismissed on a motion for summary

---

[94] 383 U.S. 715, 726 (1966)(emphasis added, internal citations omitted).

judgment, the pendent state claims are dismissed without prejudice to avoid '[n]eedless decisions of state law ... as a matter of comity and to promote justice between the parties.' "[95]

Thus, since there is no independent basis of original federal jurisdiction over Turcios' state law claims, those claims, if there are any, should also be dismissed based on considerations of comity in order to avoid needless questions of state law.

E.    Even if Turcios is asserting state law claims and this Court retained jurisdiction, Andrea Carter would still be entitled to judgment as a matter of law.

Even if this Court were to decide to retain supplemental jurisdiction over any state law claims against Andrea Carter, the facts which establish the reasonable suspicion and probable cause for Andrea Carter to fulfill her designated functions also establish that she is entitled to summary judgment on any of Turcios' state law claims. All of the state claims fail in the face of the facts establishing that Andrea Carter had a reasonable suspicion and probable cause to perform her official duties. Turcios cannot establish that Andrea Carter acted with a malicious intent. Consequently, Arkansas law provides Andrea Carter

---

[95] *Ivy v. Kimbrough,* 115 F.3d 550, 553 (8th Cir.1997), quoting *Gibbs,* 383 U.S. at 726.

with statutory immunity from civil liability for non-malicious acts or

omissions occurring within the course of her employment.[96]

> 1. As a matter of law, Andrea Carter is entitled to summary
>    judgment on any state law claims lurking in the Amended
>    Complaint.

Pursuant to Ark. Code Ann. § 19-10-305(a):

> Officers and employees of the State of Arkansas are immune
> from liability and from suit, except to the extent that they
> may be covered by liability insurance, for damages for acts or
> omissions, *other than malicious acts or omissions*, occurring
> within the course and scope of their employment.[97]

Arkansas law defines "malice" as follows:

> It is . . . an intent and disposition to do a wrongful act
> greatly injurious to another. . . Malice is also defined as the
> intentional doing of a wrongful act without just cause or
> excuse, with an intent to inflict an injury or under
> circumstances that the law will imply an evil intent . . . a
> conscious violation of the law . . . which operates to the
> prejudice of another person.   A condition of the mind
> showing a heart . . . fatally bent on mischief.[98]

In keeping with the aforesaid, in order to prove that Andrea

Carter acted with malice, Turcios must be able to prove that she acted

wrongfully and without *just cause or excuse* with the intent to injure

---

[96] Ark. Code Ann. § 19-10-305(a).

[97] Ark. Code Ann. § 19-10-305(a) (emphasis added).

[98] *Simons v. Marshall,* 369 Ark. 447, 453 (2007) (internal quotations and citations omitted).

him. However, because Smith's statements presented Andrea Carter

with facts that justified her in acting in furtherance of the state's

interest in protecting minor children from abuse, Turcios cannot prove

that Andrea Carter acted "without just cause or excuse." Consequently,

Andrea Carter is entitled to statutory immunity from suit.

> 2.   Andrea Carter is entitled to summary judgment on
>       Turcios' malicious prosecution claim as a matter of law.

The Arkansas Supreme Court has defined the elements necessary

to prove a case of malicious prosecution:

(1) A proceeding instituted or continued by the defendant against
    the plaintiff.
(2) Termination of the proceeding in favor of the plaintiff.
(3) *Absence of probable cause for the proceedings*.
(4) Malice on the part of the defendant.
(5) Damages.[99]

"[P]robable cause means such a state of facts or credible information

which would induce an ordinarily cautious person to believe that the

accused is guilty of the crime for which he is charged."[100] Malice is

---

[99] *Farm Serv. Co-op v. Goshen Farms*, 267 Ark. 324, 337, 590 S.W.2d 861, 865 (1979) (emphasis added).

[100] *Cox v. McLaughlin*, 3115 Ark. 338, 346-347, 867 S.W.2d 460, 464 (1993).

established by the proof of an "improper or sinister motive for instituting the suit."[101]

Andrea Carter did not initiate any criminal proceedings against Turcios. Based on Smith's statements, the statement of one of Turcios' former employees that he had touched her inappropriately, and Turcios' admission that he had paid an out-of-court settlement to another former employee who accused him of inappropriate behavior, Andrea Carter found that Turcios had violated the Arkansas Child Maltreatment Act. Turcios appealed Andrea Carter's finding to an Administrative Law Judge who determined that Turcios had sexually abused Smith. Turcios did not appeal the Administrative Law Judge's order to a circuit court.

As captured on the video, Smith's statements during the forensic interview constitute credible information which would induce an ordinarily cautious person to believe that Turcios sexually abused Smith as that term is defined in Ark. Code Ann. § 12-18-104(23), while performing her dental treatment

Smith's statements were entitled to be credited as a matter of law.[102] Taken as true, they constituted probable cause for Andrea

---

[101] *Hollingsworth v. First National Bank & Trust Co. of Rogers*, 311 Ark. 637, 640, 846 S.W.2d 176, 178 (1993) (*citing Cordes v. Outdoor Living Center, Inc.*, 34 Ark. 26, 32, 781 S.W.2d 31, 34 (1989)).

Carter to make a true finding report. Because the facts establish the existence of probable cause and because Turcios  cannot produce any evidence that Andrea Carter had "any improper or sinister motive," his claim of malicious prosecution fails as a matter of law.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant Andrea Carter's  Motion for Summary Judgment should be granted and this case should be dismissed in its entirety.

Respectfully submitted,

LESLIE RUTLEDGE,
Attorney General


By:    /s/ Gary L. Sullivan
Gary L. Sullivan
Arkansas Bar #92051
Assistant Attorney General
323 Center Street, Suite 200
Little Rock, AR  72201-2610
Telephone: (501) 371-2301
Facsimile:  (501) 682-2591
gary.sullivan@arkansasag.gov

*Attorneys for Andrea Carter*

---

[102] *Myers v. Morris*, 810 F.2d 1437, 1456-1457 (8th Cir. 1987)(government officials may rely on reports of young children).

## <u>CERTIFICATE OF SERVICE</u>

I, Gary L. Sullivan, hereby certify that on November 20, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF filing system, which shall send notification of the filing to all counsel of record.

<u>/s/ Gary L. Sullivan</u>