**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

JOSE TURCIOS, D.D.S.                                                          PLAINTIFF

V.                                    CASE NO. 4:17-CV-773 JLH

TABITHA CARTER, ET AL.                                                    DEFENDANTS

**PLAINTIFF'S RESPONSE TO SEPARATE DEFENDANTS TABITHA CARTER,
BRANDON EGGERTH, JARED MCCAULEY, MICHAEL LUNDY AND BRIAN
DUNGER'S  STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. On March 4, 2015 at 10:25 p.m. Sara Melton, mother of December Smith, called the Little Rock Police Department ("LRPD") to report that her daughter, December Smith ("December"), was sexually assaulted by her dentist, Dr. Jose Turcios while at an appointment with Turcios between the hours of 8:00 and 10:00 a.m. December's grandmother, Myrtle Clifton, corroborated December's account of telling Clifton what occurred.

**RESPONSE**: Plaintiff admits that Ms. Melton made such a call but denies the substance of her call, specifically that December Smith was sexually assaulted by Dr. Turcios.  Eyewitnesses who were present during Ms. Smith's appointment have stated and testified that Dr. Turcios was never alone while she was on nitrous oxide and that he never acted inappropriately with Ms. Smith. SUMF 80-91, 136-138.  Det. McCrillis never bothered to take statements from these eyewitness. SUMF 143.  Det. McCrillis admits she never talked to these witnesses prior to arresting Dr. Turcios which is a violation of investigation protocol.  SUMF 78, 84.  Moreover, physical evidence, such as the layout of the dental office, the crowded nature of the office, video footage of the interior of the office all refute Ms. Smith's allegations.  SUMF 92, 94, 144.  Plaintiff denies that anyone

1

corroborated Ms. Smith's allegations.  SUMF 134.  Merriam-Webster defines corroborate as "to support with evidence or authority; to make more certain."  Ms. Clifton did not corroborate Ms. Smith's account–she merely regurgitated what Ms. Smith told or what she was instructed to say by Ms. Smith and/or Ms. Melton in order to assist them with their fabrication.  This is, at best, secondhand information and not the independent corroboration required by Det. McCrillis' training.  SUMF 62.  Det. McCrillis did not talk to any independent witnesses prior to arresting dr. Turcios.  See Ex. 6 at 343:18.


2.  The Child Abuse Hotline at the Arkansas State Police was notified by the LRPD and a separate investigation for child maltreatment was initiated by the Arkansas State Police ("ASP") Crimes Against Children Division ("CACD").

**RESPONSE**: Plaintiff admits that the Child Abuse Hotline was notified by LRPD but notes that this occurred on March 9, 2015, which was five days after Ms. Melton contacted LRPD which is a breach of the Child Maltreatment Act and LRPD General Order 307.  SUMF 53, 72, 96, 100.  Even though Det. McCrillis knew about Ms. Smith's allegations as early as March 5, she did not begin to investigate until March 9, the very date that Det. Lundy involved himself in the matter and provided pre-fab witnesses for them.  SUMF 95-97.  Det. McCrillis admits that the day Det. Lundy promised to give her witnesses who could give information on Dr. Turcios was the same day that she referred the matter to the CACD.  See Ex. 6 at 248:14.  Considering the Child Maltreatment Act's requirement that investigators perform an "immediate screening, safety assessment, and prompt investigation of reports of…suspected child maltreatment," this unseemly time lapse suggests that the criminal case against Dr. Turcios was brought for an improper purpose.  SUMF 53.

3.  After being assigned the case on March 9, 2015, Detective Tabitha [McGrillis (sic)] Carter called the Arkansas State Police ("ASP") Crimes Against Children Division ("CACD") supervisor Tammy Dulaney at the CACD and asked that an investigator be assigned.

 **RESPONSE**: Plaintiff denies that Det. McCrillis was assigned to the case on March 9.  She testified that she did not remember when she was assigned to the case.  See Ex. 6 at 179:16. Plaintiff admits that Det. McCrillis may have spoken to Tammy Dulaney but adds that it is irrelevant to her defense.

4.  The CACD supervisor subsequently assigned the Turcios investigation to Investigator Andrea Carter ("Andrea"). On March 11, 2015 Detective McGrillis (sic) and Andrea Carter interviewed the 15 year old victim December and her mother, Melton, at the Pulaski County Children's Protective Center.

 **RESPONSE**: Plaintiff denies that the CACD supervisor assigned Inv. Carter to the case and notes that this evidence does not appear on page 149 of Det. McCrillis' deposition as averred by the City Defendants.  Plaintiff admits that Det. McCrillis and Inv. Carter, who were involved romantically at the time, interviewed Ms. Smith and Ms. Melton.  Plaintiff further notes that Det. McCrillis had off-the-record discussions with Ms. Smith and Ms. Melton wherein they discussed the fabricated charges and agreed on what topics should be avoided, such as Ms. Smith's prior sexual history, her prior criminal record, the history of domestic violence in the Melton household and Ms. Melton's lengthy criminal record.  SUMF 46, 106; see Ex. 11 at 44:15-45:1.

5.  During the interview December was asked if she knew why she was there and she advised because her dentist had sexually assaulted her. She stated that her Dentist's name is Jose and that he works at Healthy Smiles.

**RESPONSE**: Plaintiff admits that Ms. Smith was asked that question and gave that answer. Plaintiff admits that Ms. Smith identified her dentist of four years.  Plaintiff denies the substance of Ms. Smith's statements during the interview because eyewitnesses have refuted them.  SUMF 80-91, 136-138.


6.  She stated relayed that Turcios had made her uncomfortable in the past because he told her she was his prettiest patient and had "patted" her butt.

**RESPONSE**: Plaintiff admits that Ms. Smith made these statements but denies the substance of those statements.  SUMF 80-91, 136-138.  Ms. Smith has admitted that Dr. Turcios patted her lower back and that it was akin to what a grandfather might do.  SUMF 103, 141.  Furthermore, Plaintiff states that Det. McCrillis and Inv. Carter intentionally and repeatedly mispresented Dr. Turcios' lower back pat as "slapping" Ms. Smith's buttocks, which is a characterization Ms. Smith never made.  See Ex. 11 at 70:19; see Ex. 6 at 230:12.


7.  December said one day last week [March 4, 2015] she was getting a crown done and they had to put her on nitrous gas. December stated that the nurses walked out of the room on three (3) different occasions.

**RESPONSE**: Plaintiff admits that Ms. Smith stated that dental assistants left the room on three occasions but notes that this is incorrect because they actually left on five occasions, a fact which

4

Det. McCrillis would have known if she bothered to obtain the interior video footage before arresting Dr. Turcios.  SUMF 92.  Further, the assistants only left the room after Ms. Smith was removed from nitrous oxide and flushed with oxygen, a fact Det. McCrillis would have known if she interviewed those eyewitnesses before arresting Dr. Turcios.  SUMF 84.

8.  Dr. Jose Turcios stated that he was left alone with the victim five (5) times.

**RESPONSE**: Plaintiff admits that Dr. Turcios was left alone with Ms. Smith for a negligible amount of time after her nitrous oxide was discontinued and she was fully flushed with oxygen. SUMF 84, 92.

9.  December stated the first time nurses walked out of the room Turcios leaned down and stated "I want you so bad." December stated he then leaned down and kissed her on her mouth. She stated he stuck his finger down her throat, repeatedly. She described the dentist moving his finger in and out of her mouth in a "sexual way".

**RESPONSE**: Plaintiff admits that this is what Ms. Smith told investigators but denies the substance of those statements based on eyewitness accounts.  SUMF 80-91, 136-138.

10. December stated the nurses left out of the room again for a second time and he placed her hand on his knee. She said he then stood up and placed her hand on his penis and grabbed her breast. She stated he kissed her again and put his tongue in her mouth.

 **RESPONSE**: Plaintiff admits that this is what Ms. Smith told investigators but denies the substance of those statements based eyewitness accounts.  SUMF 80-91, 136-138.  Also, Ms. Smith claims that she was not on nitrous at this time which is inconsistent with Det. McCrillis' position

that Dr. Turcios opportunistically waited for Ms. Smith to be under nitrous oxide before he assaulted her.  See Ex. 31 at 15; see Ex. 6 at 173:12.

11. December stated the third time he stuck his fingers down her throat with his gloves off. December stated, "A dentist is obviously going to have his hands in your mouth, but not supposed to put his fingers down your throat repeatedly. You know back and forth, like fondling you."

 **RESPONSE**: Plaintiff admits that this is what Ms. Smith told investigators but denies that Dr. Turcios stuck his fingers down Ms. Smith throat with his gloves off.  SUMF 80-91, 136-138.

12. December was asked how she felt while on the gas and she stated she just felt "numb" and did not feel any emotion at the time. She said she was fully aware of what was going on.

 **RESPONSE**: Plaintiff admits that this is what Ms. Smith told investigators but denies the substance of those statements.  Ms. Smith claims that she was not on nitrous at this time which is inconsistent with Det. McCrillis' position that Dr. Turcios opportunistically waited for Ms. Smith to be under nitrous oxide before he assaulted her.  See Ex. 31 at 15; see Ex. 6 at 173:12.  Moreover, Det. McCrillis contradicts herself regarding the relevance of the mind-altering effect of nitrous oxide, testifying that it was relevant to her determination of probable cause and also not significant to her determination of probable cause.  See Ex. 6 at 160:10-161:11 and 173:25-174:3.  Det. McCrillis never figured out how much nitrous oxide December smith was administered at any given time.  See Ex. 6 at 173:2.  Det. McCrillis gave the following nonsensical testimony on the matter:

> Q:    Is it relevant to you whether [Ms. Smith] had a small amount or lots and lots at or around the time of the abuse she alleged?
>
> A:    It was not.

Q:      Okay.  Not relevant at all?

A:      No.  See Ex. 6 at 173:6.

                              *****

Q:      Well, what's the significance – so there's no significance at all for the nitrous oxide; is that right?

A:      Correct.

Q:      Why did you put it in the affidavit that you gave to Judge Lightle then?

A:      That she was on it?

Q:      Yeah.

A:      Because she talked about it.

Q:      Well, she talked –

A:      That was part of –

Q:       – about a lot – I'm sorry?

A:      That was part of her statement.  See Ex. 6 at 173:25-174:12.

                              *****

Q:      So did the nitrous have something to do with the case, or no?

A:      It was a fact that led to the probable cause of the case, that the gas, although she was on it, it wasn't a factor of the sexual assault.

                              *****

Q:      How did the nitrous factor into the probable cause of the case?

A:      I'm sorry, what?

Q:      How did the nitrous oxide factor into the probable cause of the case like you just testified?

A:      Because she – she says she was on the gas, and she was on
        the gas when it occurred, the incidence occurred.  And that's
        what she testified – or that's what she disclosed.  That was
        her statement.  That was her statement on accounts, and that
        was her statement to other accounts to her, to other people
        that she disclosed those things to, that she was on the gas
        when those things occurred [sic].

Q:      So why is it relevant?

A:      Because it was a fact of her statement.  See Ex. 6 at 175-176.

13. December stated that she was afraid the dentist would have hurt her if she would have done something. She was asked what she meant and she stated that he could have cut her or hurt her in her mouth. December stated when she left the office she told her grandmother, Myrtle Clifton (w/f 07-23-1957), about what happened.

**RESPONSE**: Plaintiff admits that this is what Ms. Smith told investigators but denies the substance of those statements based on eyewitness statements.  SUMF 80-91, 136-138.  That statement also makes little, if any, sense.

14. On March 12, 2015 Ms. Myrtle Clifton was interviewed over the phone. Ms. Clifton advised this all started about 8 months ago, December had asked if she could change dentist approx. December told her that her dentist made her feel uncomfortable. Ms. Clifton stated in October or November 2014 they were checking out and December told her Dr. Turcios had touched her butt. Ms. Clifton advised on March 4, 2015 December had to have several different things done and it took approx. 2 $\frac{1}{2}$ hours. She stated once they left and got in the car, December asked again to change dentist." (sic)

**RESPONSE**: Plaintiff admits that Ms. Clifton was interviewed over the telephone and adds that for Det. McCrillis to interview her in this way is a breach of investigation protocol.  SUMF 75.  The Child Maltreatment Act requires that interviews of persons responsible for an alleged child victim be interviewed face-to-face.  SUMF 75.  Det. McCrillis has admitted that the failure to conduct a face-to-face interview makes the interview less reliable because the interviewer is unable to assess the witnesses body language and facial expressions.  See Ex. 6 at 352:14-353:16.  Det. McCrillis admits that conducting a telephone interview robs the interviewer of the ability to assess the visual credibility of the witness.  See Ex. 6 at 352:14-353:16.  Plaintiff denies the remainder of City Defendants' SUMF 14 and notes that even if it were true, which it is not, it is irrelevant to whether Det. McCrillis had probable cause to arrest Dr. Turcios for the conduct alleged on March 4, 2015.

15. Valerie Robertson ("Robertson") told Detective McGrillis (sic) that Turcios come up behind her and "put his boner on her ass" while she worked as a dental assistant at *Healthy Smiles*.

**RESPONSE**: Plaintiff agrees that Ms. Robertson made this false statement to Det. McCrillis but notes that Ms. Robertson was a biased witness hand-delivered to Det. McCrillis by the husband of Dr. Turcios' business competitor.  SUMF 99-101.  Det. McCrillis knew that biased witnesses compromise any probable cause determination but went ahead anyway, omitted the existence of the bias from her affidavit.  SUMF 120-121.  Ms. Robertson provided false allegations to assist building a criminal case against Dr. Turcios.  SUMF 111-114.

16. On March 12, 2015, Detective McGrillis (sic) submitted an affidavit for warrant of arrest of Jose Turcios for committing the offense of Sexual Assault in the Second Degree on March 4, 2015.

**RESPONSE**: Plaintiff admits that Det. McCrillis submitted her affidavit on this date but asserts that it contained material omissions.  SUMF 120-121, 124-125; see Ex. 6 at 338:21. Det. McCrillis knew that the judge's awareness of biased witnesses might jeopardize her warrant request so she omitted any reference to their biased and disgruntled nature from her affidavit.  SUMF 120-121.

17. Detective McGrillis (sic) relied on the statements of the victim, and the subsequent corroborating and confirming statements made by Melton and Coleman (sic) when drafting her affidavit for the arrest warrant of Jose Turcios. McGrillis (sic) also relied on the statement of a former employee, (Valerie Robertson) of Turcios in her affidavit.

**RESPONSE**: Plaintiff denies that Ms. Melton corroborated Ms. Smith's statements because she has testified that the information she provided to Det. McCrillis and Inv. Carter was secondhand information regurgitated from what Ms. Smith allegedly told her.  See Ex. 10 at 38:8.  There is no one named Coleman in his case so Plaintiff denies any involvement by Coleman.  Plaintiff admits that Det. McCrillis relied on Ms. Robertson in her affidavit but notes that she failed to apprise the judge of Ms. Robertson's bias.  SUMF 120-121, 124-125; see Ex. 6 at 338:21.

18. On March 12, 2015, District Court Judge, Alice Lightle issued a warrant to arrest Jose Turcios finding that the sworn affidavit of Detective McGrillis (sic) demonstrated reasonable and probable cause for the issuance of a warrant of arrest for Jose Turcios for the offense of Sexual Assault in the Second Degree, Ark. Code Ann. §5-14-125.

**RESPONSE**:  Plaintiff admits that Judge Lightle issued an arrest warrant for Dr. Turcios but states that the affidavit Det. McCrillis submitted to procure the warrant was, unbeknownst to Judge Lightle defective and fraudulent insofar as it made material misrepresentations and omissions.

SUMF 120-121, 124-125; see Ex. 6 at 338:21. Moreover, Plaintiff states that Det. McCrillis violated Judge Lightle's order by returning it after its mandated due date.  SUMF 135.

19. On March 12, 2015, Turcios was arrested at the Little Rock Athletic Club.

**RESPONSE**: Plaintiff admits that Dr. Turcios was arrested at the Little Rock Athletic Club on March 12, 2015 by Det. McCrillis, Inv. Carter and others.  Plaintiff states that Det. Lundy continued his conspiratorial conduct in the matter by contacting Det. McCrillis when he saw Dr. Turcios at the health club with his 8-year-old son.  SUMF 126-127.

20. After his arrest, Turcios was taken to the LRPD where he was interviewed by Detectives Tabitha McGrillis (sic) and Jarred McCauley.

**RESPONSE**: Plaintiff admits that after his arrest Dr. Turcios was taken to the LRPD where he was interviewed by Det. McCrillis and Off. McCauley.  Plaintiff further adds that Dr. Turcios waived his *Miranda* rights and answered every question posed to him without a lawyer present. Dr. Turcios never terminated the questioning though he knew it was his right to do so.  Dr. Turcios denied all of the allegations made against him.  SUMF 129-132.

21. McGrillis (sic) stated that after submitting her file to the Prosecutor, she was requested by Deputy Prosecuting Attorney, Degan Clow to interview Turcios office staff on March 15, 2015.

 **RESPONSE**: Plaintiff admits that after Det. McCrillis submitted her file to prosecutors she was told to interview Dr. Turcios' office staff who were eyewitnesses to Ms. Smith's appointment. What this means is that Det. McCrillis and Inv. Carter arrested Dr. Turcios and submitted the

criminal file to prosecutors without ever speaking to any eyewitnesses.  SUMF 140.  Their training

emphasized to them that the child's statement must be scrutinized and any aspect of the statement

which can be corroborated, must be corroborated but they refused to do this.   SUMF 62.

Regardless, the March 15, 2015 memo from the prosecutor is proof that Det. McCrillis did not

consult with him prior to arresting Dr. Turcios on March 12, 2015 and therefore cannot cloak

herself by attempting assert the advice of counsel defense.  SUMF 140.


     22. Deputy Prosecuting Attorney, Degan Clow stated that it is standard operating procedure

and common practice to request additional interviews during reviews and preparation of felony

case files. Request of this sort were not sent in reference to a lack of information for probable cause

for arrest or a failure on the part of an investigator but part of the normal process of review of

felony case files.

**RESPONSE**: Plaintiff admits that Mr. Clow's affidavit reads as it is quoted in City Defendants'

SUMF 22 but notes that it does not refer to eyewitnesses and further that charges were not brought

by the prosecuting attorney's office until January 6, 2016, nearly a year after Det. McCrillis

submitted her file.  See Ex. 33 at 22.  This means the claim was weak before and after Det. McCrillis

grudgingly interviewed the eyewitnesses.


     23. On March 19, LRPD Detective Tabitha McGrillis (sic) obtained a search and seizure

warrant, which was executed at Turcios' office and video surveillance recordings were retrieved.

**RESPONSE**: Plaintiff denies that Det. McCrillis obtained a search and seizure warrant on March

19.  See Ex. 29 at 33.  It was obtained on March 13, 2015, after Dr. Turcios was arrested.  See Ex.

29 at 33.  Plaintiff further states that the video footage is exculpatory evidence, especially when combined with eyewitness testimony and Dr. Turcios' statements and that it was a breach of investigation protocol for Det. McCrillis not to obtain it before arresting Dr. Turcios.  SUMF 80-92, 94, 136-138, 144.

24. The video surveillance did not depict inside of the exam room where Smith was being treated; however, the doorways to the exam room were depicted.

**RESPONSE**: Plaintiff admits the video does not capture the inside of the exam room but adds that it did capture images of people passing by Ms. Smith's doorless exam room approximately 114 times while she was being treated.  SUMF 94.  It also captures the fact that Dr. Turcios was never alone with Ms. Smith while she was on nitrous oxide.  See Ex. 26 at 1-2.  Det. McCrillis failed to discover this exculpatory evidence until after she arrested Dr. Turcios.

25. Detective Brandon Eggerth did not participate in the drafting of the affidavit which led to the arrest of Turcios, but did sit in on the interview of Sara Melton Eggerth (sic) did not have any role in the decision to arrest Turcios.

**RESPONSE**:  Plaintiff admits.

26. Sergeant Jarred McCauley had a secondary role in the investigation of this case. He sat in on the interviews of Turcios and some of his staff [Ms. Flores, Ms. Atterberry, Ms. Aguirre and Ms. Henderson] as well as Dr. Bevin's (sic) and McNeil, all of which occurred after Turcios' arrest. He did not have a role in the decision to arrest Turcios.

**RESPONSE:**  Plaintiff admits.

27. Detective McGrillis (sic) knew Detective Michael Lundy's wife was a dentist and she asked Lundy if he knew a dentist by the name of Jose Turcios Detective Lundy (sic) referred Detective McGrillis (sic) to a previous report filed by women with a similar complaint and suggested McGrillis (sic) speak with his ex-wife, Dr. Liza Lundy. Detective Lundy memorialized the conversation he had with Detective McGrillis (sic) and directed the memorandum to Detective McGrillis (sic). Detective Lundy did not have any role in the assignment or investigation of Turcios in this case.

**RESPONSE**: Plaintiff admits that Det. Lundy supplied Det. McCrillis with biased witnesses who would help her build a fraudulent criminal case against Dr. Turcios.  Plaintiff denies that Det. Lundy did not have a role in the investigation of Dr. Turcios.  He supplied biased and disgruntled witnesses and drafted an official LRPD report in the matter.   See Ex. 29 at 12; SUMF 49-51, 99-101, 111-114, 121.

28. Detective Lundy had not been in the dental office of Turcios since the dental office had been relocated after his wife ceased working for Turcios in 2013.  Detective Lundy was at the Little Rock Athletic Club working out on the day Turcios was arrested, but he did not inform police Turcios was there nor, did he see or participate in the arrest of Turcios.

**RESPONSE**: Plaintiff admits that Det. Lundy testified that he had never been to Dr. Turcios' second office which is not the office where Ms. Smith was treated.  Plaintiff denies that Det. Lundy did not inform Det. McCrillis that Dr. Turcios was there.  SUMF 126-127.

29. On April 26, 2016, Turcios was acquitted in *State of Arkansas v. Jose E. Turcios*, Pulaski County Circuit Court Case No. 60-CR-16-86.

**RESPONSE**:  Plaintiff admits that Dr. Turcios was acquitted in the matter of *State of Arkansas v. Jose E. Turcios*, but denies that it occurred on April 26, 2015.  Dr. Turcios was acquitted on April 29, 2015.

Respectfully submitted,

Michael J. Laux
Michael J. Laux
E. Dist. Arkansas Bar No. 6278834
One of the Attorneys for PLAINTIFF
LAUX LAW GROUP
400 W. Capitol Avenue, Suite 1700
Little Rock, AR 72201
Telephone: (501) 242-0750
Facsimile: (501) 372-3482
E-mail: mlaux@lauxlawgroup.com
        mikelaux@icloud.com